UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BURT R. LANCASTER,

        Petitioner,

                                      Case No. 07-13692

v.                                HONORABLE AVERN COHN

LINDA METRISH,

        Respondent.

_____/

## Amended[*]
## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Burt Lancaster

(Petitioner) is a state prisoner.  He was convicted after a bench trial in Oakland County

on one count of first-degree murder and possession of a firearm in the commission of a

felony.  Petitioner was sentenced to life imprisonment on the first-degree murder

conviction and received a consecutive two year prison sentence on the felony-firearm

conviction.

Petitioner, through counsel, has filed petition for a writ of habeas corpus claiming

he is incarcerated in violation of his constitutional rights.[1] Petitioner specifically claims

that he was deprived of his due process right to present a defense when the trial court

retroactively applied a change in Michigan law to preclude him from raising a diminished

_____

[*]This Amended Memorandum incorporates the Errata issued August 19, 2010.

[1]As will be explained, this is Petitioner's second habeas petition.

capacity defense. Respondent says that the claim lacks merit. The Court agrees.
Accordingly, the petition will be denied. The reasons follow.

## II. Background

### A.

Petitioner's convictions arose from an incident that occurred on April 23,1993,
when Petitioner shot and killed his married girlfriend, Toni King, in the parking lot of a
Southfield, Michigan shopping plaza. Petitioner was charged with first degree murder
and felony firearm. At trial, Petitioner did not deny killing King but raised the defense of
insanity and diminished capacity. A jury rejected both defenses and convicted him as
charged. Petitioner was sentenced to life imprisonment on the murder charge and two
years consecutive for the felony firearm charge.

Petitioner filed a direct appeal. The Michigan Court of Appeals affirmed his
conviction and sentence in a per curiam decision. People v. Lancaster, No. 184033,
1998 WL 1991149 (Mich. Ct. App. June 23, 1999). The Michigan Supreme Court
denied leave to appeal in a standard order. People v. Lancaster, 459 Mich. 951 (1999).

In 2000, Petitioner, through counsel, filed a habeas petition raising several
claims, including a Batson[2] claim. Lancaster v. Adams, 01-70691. The case was
assigned to the undersigned who granted the writ based on Petitioner's Batson claim.
See Opinion and Order Conditionally Granting Writ of Habeas Corpus, filed September
25, 2001 (Doc. No. 26). Respondent appealed. The Court of Appeals for the Sixth
Circuit affirmed. Lancaster v. Adams, 324 F.3d 423 (6th Cir. 2003). The Supreme
Court denied certiorari. Lancaster v. Adams, 540 U.S. 1004 (2003).

---

[2]Batson v. Kentucky, 476 U.S. 79 (1986).

Petitioner was retried at a bench trial on the same charges. As will be explained, the trial court did not permit Petitioner to raise a diminished capacity defense because the Michigan Supreme Court held, in a decision handed down after Petitioner's first trial, that the defense does not exist under Michigan law. See People v. Carpenter, 464 Mich. 223 (2001). Petitioner was, however, able to make an offer of proof as to his mental state. Petitioner was again convicted and sentenced to life imprisonment and two years consecutive. The Michigan courts affirmed Petitioner's conviction. People v. Lancaster, No. 263483 (Mich. Ct. App. 2006), lv. den.,478 Mich. 870 (2007).

Petitioner returned again to federal court and filed the present petition[3] in which he seeks the issuance of a writ of habeas corpus based on the following claim:

> I. Abolishing a defense is a substantive change in the law, and U.S. Const, AM V & XIV, prohibits the judiciary from applying such a change retroactively.

### III. Standard of Review

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3]The petition, filed in 2007, was originally assigned to a different judge. Recently, the case was reassigned to the undersigned as a companion to Petitioner's 2000 case. See Order of Reassignment, filed May 19, 2010 (Doc. No. 9). Following reassignment, the Court held oral argument on July 21, 2010.

28 U.S.C. § 2254(d); <u>Harpster v. State of Ohio</u>, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. <u>Williams v. Taylor</u>, 529 U.S. 362, 412-413 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id</u>. at 411.

IV. Analysis

A.

Federal law is clear on the right to present a defense. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. <u>Washington v. Texas</u>, 388 U.S. 14, 19 (1967); <u>see also</u> <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a

criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. Montana v. Egelhoff, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." Crane, 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. Id. (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" United States v. Scheffer, 523 U.S. 303, 308 (1998)(quoting Rock v. Arkansas, 483 U.S. 44, 56 (1987)). Finally, the federal constitution does not require a state to recognize a diminished capacity defense. See Wong v. Money, 142 F.3d 313, 324 (6th Cir. 1998).

Petitioner says that precluding him from raising a diminished capacity defense at his retrial violated the Ex Post Facto clause of the U. S. Constitution, Article 1, §§ 9 and 10 and denied him of due process of law. Federal law is also clear on this. The Ex Post Facto clause provides as follows: "No State shall . . . pass . . . any ex post facto Law." U.S. Const. Art. I, § 10, cl. 1. The Ex Post Facto clause has been interpreted by the Supreme Court to apply to the retroactive elimination of a "defense" as that term is linked to the "legal definition of [an] offense" or "the nature or amount of the punishment for its commission." Collins v. Youngblood, 497 U.S. 37, 50 (1990)(quoting Beazall v. Ohio, 269 U.S. 167, 169-170 (1925)).

The Supreme Court has held that the limitations on ex post facto judicial

5

decision making are inherent in the notion of due process.  In <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 354-55 (1964), the Supreme Court held that an unforeseeable judicial enlargement of a criminal statute, applied retroactively, violates the federal due process right to fair warning of what constitutes criminal conduct.  <u>See also</u> <u>Marks v. United States</u>, 430 U.S. 188, 191-92 (1977) (stating that people have a fundamental right to fair warning of conduct which will give rise to criminal penalties and "that right is protected against judicial action by the Due Process Clause of the Fifth Amendment").  The constitutionality of judicial action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning."  <u>Bouie</u>, 378 U.S. at 458-59; <u>see also</u> <u>Hook v. Sheets</u>, 603 F.3d 316, 321 (6th Cir. 2010) (citing <u>Bouie</u>).

In <u>Rogers v. Tennessee</u>, 532 U.S. 451, 462 (2001), the Supreme Court clarified <u>Bouie</u> when it ruled that "judicial alteration of a common law doctrine of criminal law violates the principles of fair warning, and hence must not be given retroactive effect, only where it is unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue."  <u>Id</u>. at 462; <u>see also</u> <u>United States v. Barton</u>, 455 F.3d 649, 654 (6th Cir. 2006) (interpreting <u>Rogers</u> and stating that "when addressing ex post facto-type due process concerns, questions of notice, foreseeability, and fair warning are paramount").

B.

The Michigan Court of Appeals, the last court to have issued a substantive decision on this issue, rejected Petitioner's claim as follows:

> We reject defendant's claim that retroactive application of our Supreme Court's decision in <u>People v Carpenter</u>, 464 Mich. 223, 241; 627 NW2d 276 (2001)], violates the <u>Ex Post Facto</u> Clauses of the United States and Michigan Constitutions.  The general rule is that judicial decisions are

6

given full retroactive effect.  People v Neal, 459 Mich 72, 80; 586 NW 2d 716 (1998).  In criminal cases, however, ex post facto and due process concerns prevent retroactive application in some cases.  People v Doyle, 451 Mich 93, 100-101; 545 NW 2d 627 (1996). This is especially true where the decision is unforeseeable and has the effect of changing existing law.  Id.  But retroactive application does not implicate due process or ex post facto concerns where the decision does not change the law and is not unforeseeable.

In this case, as in Doyle, supra, the prior decision did not involve a change in the law because it concerned an unambiguous statute that was interpreted by the Supreme Court for the first time.  See id. at 113.  In Carpenter, supra at 230-237, our Supreme Court addressed a question of statutory interpretation that had not been previously been decided; i.e. whether diminished capacity was a valid defense.  In so doing, the [Michigan Supreme] Court determined that the comprehensive statutory framework encompassing insanity disclosed that the Legislature intended that evidence of mental incapacity short of insanity cannot be used to avoid or reduce criminal responsibility by negating specific intent. Id. at 237.  Specifically, the Court found that there was no indication that the Legislature intended to make diminished capacity an affirmative defense. Id. at 235-236.  In these circumstances, retroactive application of Carpenter does not violate the Ex Post Facto Clauses or implicate any due process concerns."

Lancaster, No. 263483, Slip. Op. at *1-2.

## C.

## 1.

As noted above, the Michigan Supreme Court in People v. Carpenter, 464 Mich. 223 (2001) held that diminished capacity was not a defense that existed under M.C.L. § 768.21a, a statute which took effect in 1975.  Carpenter was decided after Petitioner's first trial but before his retrial.  Petitioner claims that the Michigan Supreme Court's interpretation of the statute had the effect of denying him of a defense that he utilized at his prior jury trial.  At retrial, Petitioner sought again to use a diminished capacity defense and made an offer of proofs of expert testimony that had been provided at his first trial.  The trial court denied this request based on the holding in

Carpenter.  The Michigan Court of Appeals affirmed and found no constitutional violation essentially because the Carpenter decision was not unforeseeable.

2.

In order to provide context for determining Petitioner's claims, a brief recitation of the history in Michigan of the insanity defense, as well as the recognition of a diminished capacity defense, in is order.  The defense of insanity has been governed by statute since 1975.  Legal insanity is an affirmative defense requiring proof that, as a result of mental illness or being mentally retarded as defined in the mental health code, the defendant lacked "substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or conform his or her conduct to the requirements of the law."  M.C.L. § 768.21a(1).  The statute provides that "[t]he defendant has the burden of proving the defense of insanity by a preponderance of the evidence."  M.C.L. § 768.21a(3).

M.C.L. § 768.36 sets forth the consequences of a jury's finding that a defendant is guilty of an offense and that, although the defendant was mentally ill at the time the offense charged was committed, the defendant was not legally insane.  If a defendant is found "guilty but mentally ill," the trial court "shall impose any sentence which could be imposed pursuant to law upon a defendant who is convicted of the same offense."  M.C.L. § 768.36(3).  If incarcerated, the defendant must "undergo further evaluation and be given such treatment as is psychiatrically indicated for his mental illness or retardation."  Id.  If the defendant is placed on probation, "the trial judge, upon recommendation of the center for forensic psychiatry, shall make treatment a condition of probation."  M.C.L. § 768.36(4).

8

Under the common law in Michigan before the Legislature's enactment of 1975 PA 180, the test for determining legal insanity was controlled by the test enunciated in People v. Durfee, 62 Mich. 487 (1886). The Durfee test was based in part on the M'Naghten rule: " '[A]t the time of the committing of the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong.' " People v. Martin, 386 Mich. 407, 415, 192 N.W.2d 215 (1971)(quoting Daniel M'Naghten's Case, (HL 1843) 10 Cl.Fin. 200 (8 Eng.Rep. 718), 722 (1843). The subsequent enactment of M.C.L. § 768.21a(1) codified these common law principles.

Diminished capacity is a defense at common law which originated in Scotland in 1867. See State v. Wilcox, 70 Ohio St.2d 182, 436 N.E.2d 523 (1982). The state of California, in turn, is considered to be the jurisdiction that pioneered the defense in the United States. Wilcox, supra at 187. The defense allows a defendant, even though legally sane, to offer evidence of some mental abnormality to negate the specific intent required to commit a particular crime. See, e.g., People v. Jones, 151 Mich. App. 1, 5-6 (1986). "[T]he theory is that if because of mental disease or defect a defendant cannot form the specific state of mind required as an essential element of a crime, he may be convicted only of a lower grade of the offense not requiring that particular mental element." Chestnut v. State, 538 So.2d 820, 822 (Fla., 1989) (citation omitted).[4]

---

[4]The diminished capacity defense has been the subject of much debate in the United States. There is a wide divergence of views among the states concerning the admissibility of evidence of mental illness short of insanity. See, generally, 1 Robinson,

9

The defense of diminished capacity was first introduced in Michigan in the case of People v. Lynch, 47 Mich. App. 8 (1973). The defendant in Lynch was a young mother charged with first-degree murder for starving her infant.[5] She did not pursue an insanity defense. However, in order to show she lacked the requisite intent for first-degree murder, she sought to introduce testimony from two psychiatrists as to her mental state. The trial court refused to admit the evidence on the ground that defendant had never raised an insanity defense and did not give the required statutory notice. The jury convicted defendant of first-degree murder.

The Michigan Court of Appeals reversed defendant's conviction. The court of appeals acknowledged that some states viewed mental capacity as "an all or nothing matter and that only insanity ... negates criminal intent," but concluded that proof of diminished capacity is admissible as "bearing on intent generally or at least on those special states of mind where a specific intent is required or whether the state of mind by definition determines the degree of offense as here." Lynch, 47 Mich. App at 20. The court of appeals also disagreed that recognizing a diminished capacity defense separate from legal insanity "would permit the defense to in effect sneak in the insanity defense without labeling it as such and without the necessity of complying with the

Criminal Law Defenses, § 64(a), pp 272-279.

[5]It is perhaps not surprising that the defense of diminished capacity first appeared in a case involving a mother killing her infant, sometimes called infanticide. An examination into a mother's mental state often reveals evidence of depression and other mental defects which bear directly on the mother's intent to commit such a crime. Applying the defense of diminished capacity is one way in which the law has attempted to deal with the crime. See Brenda Barton, Comment, When Murdering Hands Rock the Cradle: An Overview of America's Incoherent Treatment of Infanticidal Mothers, 51 SMU L. REV. 591, 619 (1998).

notice statute as to the insanity defense." Id.

3.

The question on habeas review is whether the Michigan Supreme Court's decision in Carpenter is constitutionally significant. That is, was it unforeseeable that the defense may be abolished or is it otherwise unfair to apply the holding of Carpenter to Petitioner. The answer is no. First, after the Michigan Court of Appeals' decision in Lynch, the Michigan Supreme Court acknowledged in passing the concept of the diminished capacity defense, but it never specifically authorized its use in the Michigan courts. See Carpenter, 464 Mich. at 232-33 (citing People v. Lloyd, 459 Mich. 433 (1999) (holding that defense counsel was not constitutionally ineffective for presenting a diminished capacity defense as opposed to a defense of legal insanity); People v. Pickens, 446 Mich. 298 (1994) (same); People v. Griffin, 433 Mich. 860 (1989) (remanding for a hearing on claim that trial counsel was ineffective for failing explore defenses of insanity and diminished capacity). Thus, although diminished capacity has been utilized as a defense since 1973, it has never been codified by the legislature as a viable defense or formally adopted by the state's highest court. As such, the defense has never enjoyed a solid foothold in Michigan's criminal law.

Moreover, what occurred here is strikingly similar to the circumstances in Rogers v. Tennessee, 532 U.S. 451 (2001). In Rogers, the Tennessee Supreme Court abolished the common-law rule that the death of a victim within a year and a day after being assaulted is a prerequisite to a homicide prosecution. The court then applied the abolition to uphold the murder conviction under consideration where death occurred fifteen months after the assault. The Supreme Court also upheld the conviction,

11

holding that the retroactive abolition of the year-and-a-day rule did not violate Rogers'

due process rights.  Furthermore, the Supreme Court noted that a judicial extension of

the Ex Post Facto Clause "would circumvent the ... [c]lause's clear text, which

expressly applies only to legislatures; would evince too little regard for the important

institutional and contextual differences between legislating and common law

decisionmaking; would be incompatible with the resolution of uncertainty that marks

any evolving legal system; and would unduly impair the incremental and reasoned

development of precedent that is the foundation of the common law system."  Rogers,

532 U.S. at 452.

In Carpenter, the Michigan Supreme Court abolished a principle of common law

just like the Tennessee Supreme Court did it Rogers.  Like the year and a day rule at

issue in Rogers, the diminished capacity defense has been the subject of much

debate.  See n. 4, supra.  Neither the year and a day rule nor the defense of

diminished capacity existed as part of the statutory criminal code.  Moreover, much like

the Michigan Supreme Court's treatment of the diminished capacity defense, the year

and the day rule had never served as a ground of decision in any murder case and was

only mentioned as dicta in reported Tennessee law.  Under these circumstances, the

Michigan Supreme Court's decision in Carpenter to abolish the diminished capacity

defense cannot be said to have been "unexpected and indefensible" such that

application of Carpenter to Petitioner represents the sort of unfair and arbitrary judicial

action against which the Due Process Clause aims to protect.  This was not a situation

where the Michigan Supreme Court overruled years of its own precedent.  Rather, in

Carpenter the Michigan Supreme Court formally addressed the question, which it had

left open, of whether diminished capacity is a viable defense in Michigan in light of the statutory scheme.  As the Court of Appeals for the Eight Circuit put it:  "[t]he interpretation and exposition of state law is the prerogative of the state's highest court. The Supreme Court of Missouri is entitled to correct a lower court's mistaken reading of a state statute without running afoul of the Due Process Clause."  Hagan v. Caspari, 50 F.3d 542, 547 (8th Cir. 1995).

Finally, Petitioner has no unfettered right to the continued application of the common law.  As the Supreme Court said in Rogers:

> . . . where, as here, the allegedly impermissible judicial application of a rule of law involves not the interpretation of a statute but an act of common law judging. In the context of common law doctrines (such as the year and a day rule), there often arises a need to clarify or even to reevaluate prior opinions as new circumstances and fact patterns present themselves.  Such judicial acts, whether they be characterized as "making" or "finding" the law, are a necessary part of the judicial business in States in which the criminal law retains some of its common law elements.  Strict application of ex post facto principles in that context would unduly impair the incremental and reasoned development of precedent that is the foundation of the common law system.  The common law, in short, presupposes a measure of evolution that is incompatible with stringent application of ex post facto principles.  It was on account of concerns such as these that Bouie restricted due process limitations on the retroactive application of judicial interpretations of criminal statutes to those that are "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue."  Bouie v. City of Columbia, 378 U.S., at 354, 84 S.Ct. 1697 (internal quotation marks omitted).

Rogers, 542 U.S. at 461.  In short, Petitioner's due process rights were not violated by application of the Michigan Supreme Court's decision in Carpenter at his retrial which prevented him from presenting a diminished capacity defense.[6]

---

[6]As Respondent argues, it can be said that any error in preventing Petitioner from raising a diminished capacity defense was harmless.  A jury rejected the defense at Petitioner's first trial.  Although that trial was rendered invalid, the Batson violation had

V.  Conclusion

For the reasons stated above, Petitioner's rights were not violated by the application of the Michigan Supreme Court's decision in <u>Carpenter</u> at his retrial.  The Michigan Court of Appeals did not err in concluding the same.  Accordingly, the petition is DENIED.


Dated:  August 19, 2010                    S/Avern Cohn
                                           AVERN COHN
                                           UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 19, 2010, by electronic and/or ordinary mail.


                                           S/Deborah R. Tofil
                                           Relief Case Manager, (313) 234-5160

---

nothing to due with the evidence in the case.  Moreover, the trial court on retrial considered Petitioner's mental condition, as entered through the testimony of Petitioner's mother.  Although Petitioner's trial counsel was precluded from bringing experts to testify as to Petitioner's mental state and formally present a diminished capacity defense, the trial court permitted an offer of proof was provided as to the expert testimony proved at petitioner's first trial.  The trial court gave wide latitude to defense counsel and the prosecution to make a record as to the substance of the testimony previously offered.  In finding Petitioner guilty, the trial court considered Petitioner's mental state, but expressly found that "that there was sufficient evidence for the Court to find premeditation beyond a reasonable doubt."  The trial court further found that although Petitioner's thinking may have been affected by his mental condition, the court did not believe "it was to the extent that it would affect or acts as a defense . . . to that element."